## S16Y0825. IN THE MATTER OF MICHAEL ANTHONY EDDINGS.

(795 SE2d 183)

PER CURIAM.

This disciplinary matter is before the Court on the Report and Recommendation of the Review Panel recommending that Michael Anthony Eddings ("Eddings") (State Bar No. 238751) be disbarred for several violations of the Rules of Professional Conduct arising out of the theft of $2.3 million from his law firm's trust account by his wife (now ex-wife), Sonya Eddings ("Sonya"), while she was the law firm's financial manager. Eddings, in response, contends that a public reprimand or suspension is more appropriate under the circumstances, as Eddings did not participate in the theft and was unaware of Sonya's wrongful actions. After a review of the extensive record and detailed fact-finding provided by the special master, Katherine L. McArthur, we reject the Review Panel's recommendation that Eddings be disbarred, and we agree with Eddings that a public reprimand is the more appropriate level of discipline to impose in this case.

The special master and Review Panel contend that Eddings violated Rules 1.15 (I) (c) and 1.15 (II) (b) and Rule 5.3 (a) and (b) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d), based on the following facts: Eddings, who was admitted to the Georgia Bar in 2002 and initially worked for a plaintiffs' personal injury firm, opened his own practice in 2003, the Law Office of Michael Eddings, PC ("the Firm"), concentrating in real estate law. Sonya served as the Firm's financial manager. Sonya had a bachelor's degree in accounting, a master's degree in business administration, and substantial work experience in banking, including seven years with Columbus Bank & Trust/Synovus ("CB&T"), which was also the Firm's financial institution.

In 2006, Eddings and Sonya established Eddings Holdings for the purchasing and holding of a franchise of The Coffee Beanery with two stores. Sonya handled all of the operations related to the franchise, and told Eddings, falsely, that the franchise was breaking even. However, in March 2007, without telling Eddings, Sonya began diverting money from the Firm's IOLTA account to cover losses from the franchise. Between 2007 and October 2011, she stole over $2.3 million.

The record shows that Sonya used her inside knowledge of CB&T's technology and technological vulnerabilities to accomplish the theft. Because she had been a top professional at CB&T, the bank did not question her as closely as others might have been questioned when questions arose about the Firm's accounts. For example, just before Sonya's scheme came to light, she admitted to a CB&T

employee that she had created a fake wire confirmation to present to a client, but claimed she did so because she had not sent the wire transfer when she should have. The CB&T employee accepted this explanation and did not inform Eddings.

Although Eddings and Sonya had monthly financial meetings to review the Firm's account reconciliations, Sonya presented bank statements that she had altered to remove any negative balance information. Additionally, over the course of Sonya's criminal activities, CB&T, without notice to Eddings, ceased providing notifications of overdrafts and placed the Firm's IOLTA account on automatic overdraft protection. As a result, CB&T provided notice to the State Bar on only a few of the multiple times the IOLTA account was overdrawn. On four occasions, Sonya also intercepted letters from the Bar's Trust Account Overdraft Notification Coordinator regarding checks presented against insufficient funds in the Firm's IOLTA account, and responded, to the Bar's satisfaction, without Eddings' knowledge or consent. When Eddings did receive information about minor irregularities during this time, Sonya was able to resolve or explain the issues to his satisfaction. And, when Eddings subsequently instituted new firm policies to address the issues, Sonya simply increased her level of deception to get around the new policies.

Finally, in October 2011, after a late payoff, the Firm's title insurance company conducted an audit which showed that between October 2007 and October 2011, the Firm's IOLTA account had a negative balance 50 times. Sonya then admitted her wrongdoing, and CB&T seized the Firm's funds and closed the Firm's accounts. The Firm's insurance company provided coverage for most of the losses; however, the parties agree that $65,618.22 in losses to clients and mortgage holders remains uncompensated.

The special master also found that there was no evidence that the money that was diverted went anywhere except the account of Eddings Holdings to run or cover losses for the coffee shops, finding that there was no evidence that the diverted funds went to pay personal bills or expenses for Eddings or Sonya, that there was no evidence presented that Eddings' lifestyle was one that could not have been maintained based on his own income, and that there was no evidence that Eddings was aware of the transfers from the Firm's account to the Eddings Holdings account. The special master found by clear and convincing evidence that Eddings did not know of the diversion of funds from the trust account by Sonya between 2007 and 2011, and therefore, that he had not knowingly violated the Rules. Nevertheless, the special master concluded that Eddings' failure to supervise Sonya and his failure to maintain his trust account constituted violations of Rules 1.15 (I) (c) and 1.15 (II) (b) and Rule 5.3 (a)

and (b). For the reasons that follow, while we agree that Eddings violated Rules 1.15 (I) (c) and 1.15 (II) (b), we do not agree with the special master's conclusion that Eddings violated Rule 5.3 (a) and (b).

In this regard, the facts here point to the conclusion that Eddings was the victim of an elaborate con perpetrated by his wife, Sonya — a con that even bank officials unwittingly helped Sonya commit and in one case even helped her cover up — and not the conclusion that it was unreasonable for Eddings not to have done anything more to have prevented Sonya from misappropriating the funds that she stole. Eddings reviewed bank statements from CB&T, but had no reason to believe that Sonya had altered them; received information from an audit in February 2010 that did not find any suspected embezzlement activity; was unaware of correspondence that Sonya had deliberately intercepted to ensure that her deceit would not be discovered; and, even when Eddings implemented new office procedures in November 2010 in an effort to prevent future account irregularities and make sure that all wire transfers would be made properly, Sonya was able to use her banking skills and relationships to circumvent these policies (and even convince bank officials to hide from Eddings the fact that she had created a fake wire transfer in connection with one of the law firm's real estate closings). Sonya was so convincing in her con that no one from CB&T believed that any deceit was occurring, let alone to the tune of $2.3 million, and Eddings was given no information upon which to base a reasonable belief that any deceit was occurring. Indeed, no one discovered Sonya's deception until October 27, 2011, when Sonya herself confessed in writing during the audit by First American Title Insurance Company that she had been misappropriating funds from the law firm's trust account since 2007. In short, none of the activity here shows the type of misconduct on the attorney's part that this Court would generally look for to justify a suspension from the practice of law. See, e.g., *In the Matter of Jones*, 280 Ga. 302 (627 SE2d 24) (2006).

Additionally, as the special master noted, this is not a case where Eddings should have noticed a change in his lifestyle or that of his wife. To the contrary, Sonya diverted money from the IOLTA account to cover losses from the two coffee shops that she operated independently from Eddings and that she was eventually forced to close. Eddings had no knowledge that the coffee shops were failing.

Based on the above, the special master has not provided any solid reasoning to support the conclusion that Eddings violated Rule 5.3 (a) and (b) relating to his duty to make reasonable efforts to supervise Sonya under the facts of this case. Eddings therefore cannot be

disciplined for any alleged violation of this Rule. Specifically, Rule 5.3 (a) and (b) provides that:

> With respect to a nonlawyer employed or retained by or associated with a lawyer . . . a lawyer who . . . possesses . . . managerial authority in a law firm[ ] shall make *reasonable* efforts to ensure that the firm has in effect measures giving *reasonable* assurance that the person's conduct is compatible with the professional obligations of the lawyer; [and] a lawyer having direct supervisory authority over the nonlawyer shall make *reasonable* efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]

(Emphasis supplied.) The special master concluded that Eddings violated this Rule, reasoning that

> Eddings . . . has violated Rule 5.3 (a), in that he did not have sufficient measures in place to oversee the work of his financial manager, Sonya . . . , such as having review by a CPA firm of the firm's handling of the IOLTA account. . . . [Eddings] . . . was lulled into a false sense of security by the fact that the financial manager of his firm was his wife who was highly trained and educated in banking and business matters, and his expectation was that she would not take actions that would harm him, his firm, and his family. In light of the expertise that Sonya . . . had in banking and financial matters, it was even more important to have oversight by a CPA firm in this instance than it would be of a person who was not [an] expert in financial matters and banking. I find that there should have been oversight of the financial manager's use of online banking and the R.E.D. deposit system by either [Eddings] . . . or, if he did not have sufficient expertise in these banking modalities, by someone who had expertise in same. Additionally, based on the number of irregularities that were occurring, I find that although there were policies and guidelines in place, the supervision of Sonya . . . by [Eddings] was ineffective and that [Eddings] is in violation of Rule 5.3 (b).

Report and Recommendation at 23.

The problem with the special master's analysis is that it punishes Eddings for failing to take steps that he was not reasonably

required to take in light of the information that was made available to him. It is undisputed that Sonya was able to consistently explain away any irregularities in the IOLTA account to the satisfaction of all of the professionals with whom she had been working, including bank officials, whenever any question arose. Contrary to raising the idea that further supervision was needed, all of the professionals dealing with Sonya were consistently given the impression that everything was fine. Despite the fact that Sonya consistently gave that impression, however, Eddings still took the *reasonable* step of implementing new procedures in November 2010, to correct any potential future irregularities by requiring Sonya to report to him with proof that all wire transfers were being sent properly. Eddings had no reason to believe Sonya would be able to, or actually would, use her banking skills to circumvent these procedures and commit fraud. Again, as far as Eddings, CB&T, and any auditors knew up to that point, there was no evidence of any questionable activity that could not be reasonably explained away, or that indicated that Sonya truly needed additional supervision.

We therefore are not convinced that Eddings should be disciplined for failing to take the step of calling in a CPA firm to supervise the activities of an employee who was so good at conning others that she consistently led all of them to believe that she needed no such supervision.

Despite the fact that Eddings had no knowledge of Sonya's fraudulent activities, however, we agree with the special master that Eddings violated the plain terms of Georgia Rules of Professional Conduct 1.15 (I) (c) and 1.15 (II) (b), because these Rules do not require Eddings to have had knowledge of Sonya's activities in order for him to have violated them. Rule 1.15 (I) (c) provides in relevant part that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive," and Rule 1.15 (II) (b) states in pertinent part that "[r]ecords on [an attorney's] trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person." These Rules make no reference to the attorney's knowledge or lack thereof with respect to activities of others relating to the attorney's trust account.

In considering the appropriate sanction to be applied for Eddings' violations of Rules 1.15 (I) (c) and 1.15 (II) (b), we must also keep in mind the ABA Standards for Imposing Lawyer Sanctions.[1] Pursuant

---

[1] This Court considers the ABA Standards as providing useful guidance in determining the appropriate sanction. See *In the Matter of Morse*, 265 Ga. 353 (2) (456 SE2d 52) (1995).

to ABA Standard 3.0, the factors to be considered in general after a finding of lawyer misconduct are:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

Id.

In this regard, we find the following to be mitigating factors with respect to the appropriate level of discipline to impose here: the absence of a prior disciplinary record;[2] the absence of a dishonest or selfish motive; the existence of personal and emotional issues; Eddings' timely good faith effort to make restitution or to rectify the consequences of his misconduct;[3] Eddings' cooperative attitude in the disciplinary proceedings; proof of Eddings' good character and reputation, including serving his country during 12 years in the military and his significant service to his community through his church, the Boy Scouts, and other charitable institutions; and his sincere expression of remorse.

With respect to the specific range of sanctions that is appropriate based on a lawyer's failure to preserve a client's property, ABA Standard 4.1 states:

Absent aggravating or mitigating circumstances, upon application of the factors set out in [ABA Standard] 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with

---

[2] After the issuance of the special master's report, the Court issued an opinion imposing a public reprimand for Eddings' communication, while he was representing a criminal defendant, with persons represented by counsel without counsel's prior consent. See *In the Matter of Eddings*, 298 Ga. 434 (782 SE2d 445) (2016).

[3] Eddings even declined to contest the summary judgment motion filed by First American Title Insurance Company in the lawsuit against him and Sonya below, instead choosing to stipulate to all of the evidence used against him in the discovery process and voluntarily subjecting himself to a judgment of over $1.9 million.

client property and causes injury or potential injury to a client.

4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

Although the maximum sanction for violation of Rules 1.15 (I) (c) and 1.15 (II) (b) is disbarment, we disagree with the Review Panel and do not believe that disbarment is the appropriate sanction to impose here given the absence of intentional misconduct on Eddings' part, the fact that the fraud here resulted from the actions of Sonya and not Eddings, and the multiple mitigating factors. Compare *In the Matter of Anderson*, 286 Ga. 137, 140-141 (685 SE2d 711) (2009) (imposing sanction of disbarment where lawyer had two prior disciplinary sanctions, noting the Court was less troubled by lawyer's failure to properly supervise employees who negligently handled real estate closing funds, than by lawyer's intentional bad faith conduct in paying himself funds from one transaction contrary to escrow agreement). Nor do we find the suspension recommended by the special master to be appropriate given the special master's erroneous conclusion that Eddings violated Rule 5.3 (a) and (b). Instead, we believe that, under the unique circumstances of this case, a public reprimand is the more appropriate sanction to impose here. See ABA Standard 4.13 ("Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client"); Rule 4-102 (b) (3) (Public reprimand is appropriate level of discipline "in cases that merit more than a review panel reprimand but less than suspension"). See also *The Florida Bar v. Moore*, 59 So3d 109 (Fla., Mar. 22, 2011) (approving report in SC10-1826 and imposing public reprimand after attorney failed to detect that employee had embezzled over $2 million from firm's bank accounts over five years, resulting in loss of client funds).

Accordingly, we hereby direct that Michael Anthony Eddings receive a public reprimand in accordance with Bar Rules 4-102 (b) (3) and 4-220 (c) for his violations of Rules 1.15 (I) (c) and 1.15 (II) (b). We also order that Eddings comply with the following additional terms that are in line with recommendations of the special master. Specifically, we order Eddings (1) to accept the services of the State Bar's Law Practice Management Section in setting up his financial accounts

and law practice; (2) to take the next available Multistate Professional Responsibility Examination and obtain a passing score; and (3) to make full restitution within five years of this order to the victims who have not been compensated by First American Title Insurance Company. Violation of this order may subject Eddings to additional discipline.

*Public reprimand. All the Justices concur.*

DECIDED DECEMBER 15, 2016.

*Paula J. Frederick, General Counsel State Bar, William J. Cobb, Assistant General Counsel State Bar*, for State Bar of Georgia.