S16Y1446. IN THE MATTER OF CHRISTOPHER
G. NICHOLSON.
(791 SE2d 776)

PER CURIAM.

The State Bar of Georgia filed a formal complaint, charging attorney Christopher G. Nicholson (State Bar No. 543275) with violations of Rules 1.15 (I) (b), 4.1 (a), 8.4 (a) (4), and 9.3 of the Georgia Rules of Professional Conduct. See Bar Rule 4-102. As a basis for these charges, the State Bar alleged that Nicholson represented a client with respect to an automobile accident in which the client had been injured, and after the client died, Nicholson also served as a temporary administrator of his estate. On behalf of the client and the estate, Nicholson asserted claims for the injuries that the client had

sustained, and Nicholson negotiated a settlement with two insurance companies. In connection with that settlement, Nicholson signed an affidavit in which he represented that all medical bills arising from the accident had been paid in full. That representation, however, was false, and Nicholson knew it to be false. Indeed, a medical facility in which the client had been hospitalized had not been paid in full, and it had filed a statutory hospital lien in the amount of $11,734 for medical services provided to the client. The false affidavit induced the insurance companies to pay the settlement funds to Nicholson on behalf of the estate, and yet, Nicholson did not use the settlement funds to satisfy the hospital lien. The medical facility later sued the insurers on the lien, the insurers filed a third-party claim against Nicholson, and judgment was entered against Nicholson for the full amount of the lien and attorney fees. Nicholson, however, failed to pay the judgment, he refused to respond to post-judgment discovery, and he eventually was held in contempt for his refusal to respond to discovery. Three of the violations with which Nicholson was charged are sanctionable by disbarment.

Nicholson failed to file a timely answer to the formal complaint, and by his default, he admitted the facts alleged in the complaint.[1] See Bar Rule 4-212 (a). Nicholson filed a motion to set aside the default, but the special master[2] denied his motion. The special master then set a hearing for the limited purpose of receiving evidence of aggravating and mitigating circumstances. In the weeks leading up to the hearing, Nicholson exchanged a number of e-mails with the special master and counsel for the State Bar. In several of these e-mails, Nicholson conveyed his contempt for the disciplinary process in general, and in others, he signaled his contempt for the special master in particular, flinging personal insults, unsupported accusations of misconduct, and conspiracy theories along the way.[3] Moreover, on several occasions, Nicholson attempted by e-mail to correspond with the special master ex parte about the merits of his case.

---

[1] Nicholson earlier failed to respond in a timely manner to the notice of investigation, which led this Court to suspend Nicholson pursuant to Bar Rule 4-204.3 (d). Nicholson filed a response only after we suspended him, and at that point, we lifted the suspension.

[2] We appointed Jo Carol Nesset-Sale as special master in this case.

[3] Among other things, Nicholson referred to his disciplinary proceeding as "a Star Chamber proceeding," claimed to "know [that the] fix is in," referred to the special master as the "High Executioner," and accused the special master of "making up the law and rules as you go to preclude me from having a fair and impartial hearing." Nicholson asked the special master if she had "any more homemade rules for me," adding that "[t]his hearing should be a blast." Nicholson variously questioned the qualifications and impartiality of the special master, alleging that the special master and State Bar counsel were "joined at [t]he hip," accusing the special master of ruling against him without reading his filings, and writing to the special master: "U r hopeless." In a few e-mails, Nicholson revealed his failure to appreciate the

Even after the special master directed Nicholson to cease writing to her ex parte about the merits, he persisted in sending e-mails about his case without copying counsel for the State Bar.

At the hearing, Nicholson — who was representing himself — continued to display his contempt for the disciplinary process and the special master. Notwithstanding the clear direction of the special master about the limited purpose of the hearing, Nicholson repeatedly attempted to offer evidence and argument about the merits of the formal complaint and the circumstances of his default. When the special master attempted to give him further direction, Nicholson responded that "I don't care what you ask me to do." He announced that "[t]he fix is in on this case." He accused the special master of having improper ex parte communications with State Bar counsel and various members of the judiciary. He said to the special master: "This is a Star Chamber proceeding . . . [a]nd you're here to do a hatchet job on me." He attempted to talk over the special master and, at one point, to cross-examine her. He repeatedly offered snide and sarcastic asides to the rulings of the special master. He was disrespectful not only to the special master, but to State Bar counsel as well. After presenting seven character witnesses in mitigation, Nicholson abruptly walked out of the hearing before its conclusion, remarking that "I don't want to listen to [the special master] for another ten minutes," and explaining that he had a more pressing engagement — a card game — to attend. Following his departure, the special master noted for the record that Nicholson appeared physically agitated during the hearing and spoke in an "extraordinarily disrespectful tone of voice."

With respect to the evidence of aggravating and mitigating circumstances, the State Bar presented evidence that Nicholson still had not satisfied the judgment against him, even after the commencement of disciplinary proceedings. The State Bar also presented evidence of a prior disciplinary history, including a September 2013 Investigative Panel reprimand and a June 2014 formal letter of

---

seriousness of the proceeding and the gravity of the violations with which he was charged, referring to the proceeding as "nonsense," stating that "[the] whole proceeding is about nothing," and sarcastically suggesting that the hearing be held at the Varsity restaurant in Athens. He accused the special master and State Bar counsel of lacking "professional courtesy [and] common decency." He questioned why the State Bar was working with a "rogue judge" in his home circuit, and he claimed that the special master had improper ex parte communications with another judge in his home circuit. He disrespectfully referred to the special master as "Ms. Hyphenated," and he claimed that the special master wanted only "to show me who has [the] biggest member in the group." In one e-mail, he inquired whether the special master had ever been married, noting that he wanted to know the name of her husband so as to "get him [the] Congressional Medal of Honor and/or sainthood," and adding that "[y]ou are one mean[-]spirited and arbitrary woman. You are one of many that are that way."

admonition. As for mitigation, the seven character witnesses for Nicholson testified only that he had a reputation as an effective advocate, that he generally got good results for his clients, and that he had not made any false statements of which they were aware. One of those character witnesses also referred to a court proceeding in which Nicholson was held in contempt for disruptive and disrespectful outbursts, much like his conduct in the disciplinary hearing. Although some reference was made to Nicholson having previously received psychiatric examinations and treatment, Nicholson did not urge mental illness as a mitigating circumstance, nor did he offer admissible evidence of any mitigating mental illness.

Based upon his default, the special master concluded that Nicholson violated Rules 1.15 (I) (b), 4.1 (a), 8.4 (a) (4), and 9.3. The special master identified a number of aggravating circumstances, including his lack of remorse, his refusal to acknowledge the wrongful nature of his conduct, his failure to pay the judgment against him, his substantial experience in the practice of law,[4] and his disrespectful and outrageous conduct throughout the disciplinary process. In the latter, however, the special master also found a mitigating circumstance, noting the evidence that Nicholson previously had received psychiatric treatment, and finding that his bizarre behavior in the course of the disciplinary process was proof of an ongoing mental health issue. The special master explained that, if Nicholson were not mentally ill, the special master would recommend disbarment. But because the special master found mental illness, she instead recommended that Nicholson be suspended from the practice of law for not less than one year, and that he be reinstated to practice only after a psychiatric and psychological evaluation, a showing of compliance with any treatment prescribed, and the payment of restitution to the insurance companies for the false affidavit.

The Review Panel accepted most of the findings of the special master, but it rejected her finding of mental illness as mitigation, noting that Nicholson never urged mental illness as a mitigating circumstance and that he had presented no admissible evidence of a mitigating mental illness. In the absence of that finding, the Review Panel concluded that a suspension of not less than two years was appropriate, with conditions for reinstatement similar to those proposed by the special master. This matter is now before the Court on the report and recommendation of the Review Panel.

In his brief to this Court, Nicholson offers nothing of substance. He identifies no legal error by the special master, he points to no

---

[4] Nicholson was admitted to practice in 1974.

deficiency in the evidence, and he comes forward with no theory of mitigation. He shows no remorse, and he expressly disavows any mental illness. Instead, consistent with his conduct throughout this disciplinary proceeding, he attempts to minimize the wrongfulness of his signing a false affidavit, he questions the qualifications and integrity of various judges in his home circuit, he refers to State Bar counsel as a "dishonest devil," he speaks of a "hatchet job" undertaken by "[t]his lady special master," and he compares the disciplinary process to the infamous McCarthy hearings, as well as proceedings in "Nazi Germany and other Communist countries."[5] He adds that he "has too many cases pending to be suspended."

With all of the outrageous conduct throughout the disciplinary process, it is easy to forget what this case is about: dishonesty. As admitted by virtue of his default, Nicholson signed a false affidavit. He did so intentionally. He did so in the course of representing a client and in connection with the practice of law. And he did so to the injury of others, to whom he continues to refuse restitution, even after the entry of a judgment against him and the initiation of disciplinary proceedings. As this Court has explained, we have "little tolerance for a lawyer who lies during disciplinary proceedings or engages in conduct involving dishonesty, fraud, deceit, or misrepresentation." *In the Matter of Friedman*, 270 Ga. 5, 6-7 (505 SE2d 727) (1998). Dishonesty in the practice of law and to the injury of another is a sufficient basis for disbarment. See, e.g., *In the Matter of Wooten*, 295 Ga. 856 (764 SE2d 551) (2014) (disbarment where attorney exhausted settlement funds in trust account for personal use and lied to clients about resolution of medical liens); *In the Matter of Wright*, 286 Ga. 468 (689 SE2d 822) (2010) (voluntary surrender, which is tantamount to disbarment, where attorney acting as closing attorney prepared closing documentation falsely showing that loans were secured by first lien position, but lenders were not receiving first lien position security interest). Here, there are many aggravating circumstances, and no mitigating circumstance of significant weight. Considering the nature of Nicholson's misconduct, his prior disciplinary history, the absence of remorse, his indifference to restitution, and his repeated and contemptuous efforts to obstruct the disciplinary process, we conclude that the appropriate sanction in this case is disbarment.

---

[5] Much of his brief is devoted to a lengthy explanation of his default, in which he claims that he had secured counsel to file a response to the formal complaint, but that lawyer refused to represent him after he offended the lawyer's administrative assistant by his use of a racial slur.

We order that the name of Christopher G. Nicholson be removed from the rolls of persons authorized to practice law in the State of Georgia. Nicholson is reminded of his duties under Bar Rule 4-219 (c).
*Disbarred. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Wolanda R. Shelton, Assistant General Counsel State Bar*, for State Bar of Georgia.