**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 5, 2024

S24Y0099. IN THE MATTER OF ANDREA JO ANNE DAVID-VEGA.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board") that the Court adopt the findings and conclusions of Special Master Adam Marshall Hames, who recommends Respondent Andrea Jo Anne David-Vega (State Bar No. 364871) receives at least a two-year suspension for her violations of Rules 1.2, 1.3, 1.4, 1.5, 1.16, 3.4 (a), 8.1 (a), 8.4 (a) (4), and 9.3 of the Georgia Rules of Professional Conduct ("GRPC").[1] David-Vega, who was admitted to the State Bar in 2008, has filed exceptions to the Review Board's report, challenging the Special Master's recommended discipline and requesting a six-to-

---

[1] The maximum penalty for a violation of Rules 1.2, 1.3, 3.4 (a), 8.1 (a), and 8.4 (a) (4) is disbarment, while the maximum penalty for a violation of Rules 1.4, 1.5, 1.16, and 9.3 is a public reprimand.

nine-month suspension. The State Bar did not file exceptions to the Review Board's report. However, the State Bar did file a response to David-Vega's exceptions, noting that disbarment is the presumptive discipline in this case but that it was satisfied with the Special Master's recommendation of at least a two-year suspension. We agree with the Special Master and the Review Board that significant discipline is warranted. However, given the facts of the underlying matter and David-Vega's admitted violations of the GRPC, we conclude that disbarment is the appropriate sanction.

The record shows that on June 30, 2020, David-Vega's long-time client, Fadi L. Milan, filed a grievance against her with the State Bar. On or about July 22, 2020, the State Bar mailed the grievance to David-Vega and directed her to respond to the grievance no later than August 10, 2020. After David-Vega failed to timely respond, the State Bar sent her a letter on or about March 3, 2021, and directed her to respond to the grievance no later than March 13, 2021. David-Vega again failed to respond to the grievance, and on or about March 30, 2021, the State Bar issued a Notice of Investigation against her, informing her that, based on Milan's grievance, it appeared that

2

David-Vega had violated several GRPC Rules. On January 14, 2022, following the investigation, the State Bar filed the underlying formal complaint. Although David-Vega acknowledged service of the complaint, she did not timely file an answer and, on March 24, 2022, the State Bar filed a motion for default pursuant to Bar Rule 4-212 (a).

On May 20, 2022, David-Vega filed a motion to stay, asserting that she intended to submit a petition for voluntary discipline, in which she would acknowledge wrongdoing but would include significant mitigating evidence. On May 31, 2022, counsel for David-Vega represented that David-Vega was in the process of drafting the petition for voluntary discipline and would "share" the petition with the State Bar and the Special Master "in a couple of weeks." The State Bar informed David-Vega and the Special Master that it had no objection to David-Vega filing a petition for voluntary discipline and agreed to David-Vega's proposed timeline. Based on this representation, the State Bar did not file a formal response to the motion to stay. However, David-Vega never filed the petition. Instead, on July 21, 2022—over four months after her answer to the formal complaint was due—David-Vega filed an answer and a motion to open

3

default. On July 29, 2022, the State Bar filed a timely response to David-Vega's motion to open default, requesting that the Special Master grant the State Bar's motion for default and deny or dismiss David-Vega's motion on the ground that the State Bar had relied on David-Vega's representation that she intended to file a petition for voluntary discipline and that the State Bar, the disciplinary process, and the public would be prejudiced by opening David-Vega's default.

On August 8, 2022, the Special Master issued his first Report and Recommendation, in which he granted the State Bar's motion for default, noting that David-Vega failed to articulate a legitimate basis to reopen the default. The Special Master, citing *In the Matter of Nicholson*, 299 Ga. 737, 738 (791 SE2d 776) (2016), granted David-Vega a hearing on aggravating and mitigating circumstances so that she could offer evidence related to the recommended sanction.[2] The

---

[2] We note that although, generally speaking, the opening of default should be liberally applied, we cannot say that the Special Master abused his discretion in refusing to open the default here, given that David-Vega failed to show providential cause, excusable neglect, or that this is a proper case for opening default. See OCGA § 9-11-55 (b). David-Vega produced no evidence suggesting she had been trying to timely respond to the formal complaint, continued to practice law during this period, and failed to cooperate with the

Special Master then summarized the facts alleged and violations charged in the formal complaint, which were deemed admitted pursuant to David-Vega's default. See Bar Rule 4-212 (a).

As recounted by the Special Master, the admitted facts show the following. In August 2016, Milan retained David-Vega to pursue his personal injury claim based on an automobile accident, in which he suffered a serious brain injury. David-Vega met with Milan to discuss his claim and then contacted the liability insurer for the defendants, identifying herself as the attorney representing Milan. However, David-Vega did not provide Milan with a written contingency fee agreement. In March 2018, after not hearing from David-Vega for a

disciplinary proceedings and the concurrent legal malpractice action that Milan filed against her. See *In the Matter of Turk*, 267 Ga. 30, 30 (471 SE2d 842) (1985) (declining to allow attorney to open default and noting in part that the attorney was actively practicing law during the relevant time period). Cf. *In the Matter of Boyd*, 315 Ga. 390, 394 (882 SE2d 339) (2022) (case remanded for a hearing on the motion for default where respondent dutifully responded to the grievance and subsequent investigation and alleged that her failure to file an answer to the formal complaint was based on a series of miscommunications). We further note that although some facts may have been admitted only by default, as discussed below, David-Vega also made certain admissions in her testimony at the hearing on aggravating and mitigating circumstances, including admitting that she fabricated evidence that she provided in the underlying disciplinary matter and in the related civil malpractice case.

"[l]ong time," Milan emailed her, informing her that his injuries from the accident had worsened. In May 2018, David-Vega discussed with Milan the status of his claim and his desire to update his will and scheduled a time for Milan to come to her office to sign the necessary documents. However, when Milan arrived for his appointment, David-Vega was not in the office and had arranged for her husband, who is not a lawyer, to provide Milan with the paperwork.

On May 26, 2018, following this meeting, Milan emailed David-Vega to schedule a time to discuss his case. David-Vega did not respond to Milan, cut off communication with the insurer, and failed to file the suit by August 2018, at which point the limitation period had run. Between January 2019 and February 2020, Milan called David-Vega's office over 65 times to ask about the status of his case and continued contacting her via email and text message through April 2020. During this time, David-Vega's staff scheduled six different conference calls for Milan to speak with David-Vega, but David-Vega missed each of the calls. Occasionally, David-Vega would respond via email or text message, claiming that his email had been sent to her spam folder or

6

that she had another obligation and needed time to respond to his questions. On April 30, 2020, Milan texted David-Vega the following:

> Good morning Miss Andrea I'm glad you're OK and safe can we please start somewhere On my case since January of 2019 when I visited your office to drop off some documents and met your husband and he told me that I will have an update. Since then I have no update on my case and I called text emailed for so many times and no one is replying to me it's like I don't exist or I don't even have a case as I told you I'm preparing to leave Georgia to state of Florida and I need to know the status of my case I tried so many times following up with your office and they keep telling me Ms. Andrea has the file and she's the only one know about the case. I know you for almost 13 years and you always Took care of me well please update me Thank you.

David-Vega did not respond to this message. On May 5, 2020, Milan notified David-Vega by email and U.S. mail that he was terminating her representation and requested that she provide him with his file. Less than five minutes after David-Vega received this email, she texted Milan asking, "Mr. Milan, are you firing me? Why?" Milan and David-Vega had no further contact and David-Vega failed to provide Milan with the requested files.

Milan then filed the underlying grievance with the State Bar and a professional malpractice complaint against David-Vega on October

19, 2020. According to the process server, David-Vega repeatedly refused to accept service of the malpractice complaint. However, on December 23, 2020, David-Vega filed her answer to the malpractice complaint, in which she denied that Milan had been injured in the accident, that she agreed to represent him, that she failed to file suit on his behalf prior to the expiration of the two-year statute of limitation applicable to his personal injury claim, that Milan had terminated her representation on May 5, 2020, and that she failed to provide him with the requested files.

Although David-Vega failed to timely respond to the grievance—or the subsequent formal complaint—David-Vega did respond to the State Bar's Notice of Investigation against her, providing a sworn response stating that on March 18, 2018, she received an email from Milan dated March 9, 2018, in which he advised her that he would no longer need her services and that she had emailed Milan his entire accident file. Per the State Bar's request, David-Vega sent several email exchanges purporting to be between her and Milan. However, the March 9 email terminating David-Vega's representation supposedly sent from Milan was in a different format and font than

the others and, unlike in the other emails, Milan appeared to use perfect diction, capitalization, and punctuation. Milan denied having sent this email, and the State Bar determined that the email was likely falsified by David-Vega.

On or about April 1, 2021, Casey Stevens, Milan's counsel in the malpractice matter, served requests for production on David-Vega, demanding all agreements and written correspondence between David-Vega and Milan and Milan's file. Stevens also served interrogatories upon David-Vega, demanding that she identify any facts or documents supporting her denial of liability. David-Vega failed to timely respond to the discovery request. On June 23, 2021, after attempting to contact David-Vega several times to ask her to respond to the discovery requests, Stevens filed a motion to compel and a motion for sanctions. On September 3, 2021, David-Vega filed her response to the motions, asserting that she had "responded in full" to the discovery requests, but was unable to provide any proof. The trial court judge granted the motion to compel and instructed David-Vega to send the requested documents and her responses to the

interrogatories by October 14, 2021. David-Vega failed to provide the discovery requests in a timely manner, but she did deliver the requested responses on October 18, 2021. However, the responses were incomplete, unresponsive, and untruthful, as David-Vega claimed that she had not been named as a party in a civil lawsuit within the past ten years, even though she had another professional malpractice lawsuit against her pending since May 28, 2021. On December 9, 2021, Stevens filed a second motion to compel, requesting that David-Vega provide the requested documents and Milan's file by January 8, 2022. Once again, David-Vega failed to file a timely response.

Based on these admitted facts, the Special Master concluded that

David-Vega knowingly violated Rules 1.2,[3] 1.3,[4] 1.4 (a),[5] 1.5 (c),[6] 1.16

---

[3] GRPC Rule 1.2 states in pertinent part that "a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."

[4] GRPC Rule 1.3 states in pertinent part that "[a] lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

[5] GRPC Rule 1.4 (a) states in pertinent part that " [a] lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; [and] (4) promptly comply with reasonable requests for information."

[6] GPRC Rule 1.5 (c) states in pertinent part that "[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined."

(d),[7] 3.4 (a),[8] 8.1 (a),[9] 8.4 (a) (4),[10] and 9.3[11] of the GRPC, found in Bar Rule 4-102 (d).

On October 5, 2022, after issuing his first Report and Recommendation, the Special Master held a hearing on aggravating and mitigating circumstances. At the hearing, David-Vega admitted to fabricating the email allegedly sent by Milan dated March 9, 2018, terminating her representation, and also to fabricating a text message to make it appear as though Milan had terminated her representation

---

[7] GRPC Rule 1.16 (d) states in pertinent part that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

[8] GRPC Rule 3.4 (a) provides in pertinent part that "[a] lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value."

[9] GRPC Rule 8.1 (a) provides in pertinent part that "[a] lawyer . . . in connection with a disciplinary matter, shall not knowingly make a false statement of material fact."

[10] GRPC Rule 8.4 (a) (4) provides in pertinent part that "[a lawyer may not] engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

[11] GRPC Rule 9.3 provides in pertinent part that "[d]uring the investigation of a grievance filed under [the GRPC], the lawyer complained against shall respond to disciplinary authorities in accordance with State Bar Rules."

prior to the statute of limitation expiring. She explained that she did not have a "good answer" for why she fabricated the documents and asserted that she "had so much going on" and "probably should have reached out for help."[12] David-Vega was also unable to provide a reason for failing to timely file Milan's claim.

In mitigation, David-Vega called as a witness her licensed counselor, Jennifer Hawkins, who testified that in 2016, David-Vega expanded her existing practice by becoming a Special Assistant Attorney General representing DFCS in Gwinnett County with a caseload of 200 cases. She later acquired an additional 150 cases from a neighboring county while still managing her own practice, which handled family law, business law, bankruptcy, personal injury, juvenile, and criminal law cases. David-Vega became overwhelmed with her case load, but continued to take cases because she "did not know how to say no" and felt unable to ask for help. Hawkins testified

---

[12] The record shows that David-Vega submitted the fabricated email in both the underlying disciplinary matter and the civil malpractice case. David-Vega submitted the fabricated text message in the malpractice case but did not submit this fabricated evidence to the State Bar as part of this disciplinary matter.

that David-Vega's inability to ask for help stemmed from childhood trauma. Around this same time, she was assisting in providing care for her mother and stepfather, who had become ill. According to Hawkins, David-Vega eventually "reached a point where she completely unplugged." David-Vega then began seeing Hawkins for treatment and was diagnosed with General Anxiety Disorder and ADHD.

Additionally, counsel for David-Vega announced that, right before the hearing commenced, the parties had reached a settlement in the legal malpractice claim. As mitigating evidence, David-Vega also submitted character evidence consisting of depositions of a superior court judge and three juvenile court judges, all of whom David-Vega had appeared before. The judges described David-Vega as "a hardworking, dedicated, and zealous advocate for her clients."

In aggravation, Milan testified that he had suffered permanent injuries to his eye, neck, head, back, and brain as a result of the accident for which he sought David-Vega's legal representation; that he had been subject to debt collectors calling and was unable to access

14

his medical records because they had been sent to David-Vega; and that he felt betrayed by David-Vega because they had a long-existing attorney-client relationship prior to the accident, as she had represented him in nine different matters. Milan's counsel in the malpractice case, Stevens, testified that David-Vega had lied on numerous occasions and failed to cooperate in the legal malpractice case; that David-Vega failed to show any accountability until the day of the hearing; and that David-Vega had drawn out the settlement negotiations in the civil malpractice action for two years.

On December 14, 2022, the Special Master issued his second Report and Recommendation, in which he recounted his factual findings following the hearing on aggravating and mitigating circumstances and made a discipline recommendation. In determining the appropriate level of discipline, the Special Master considered the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). See *In the Matter of Morse*, 266 Ga. 652 (470 SE2d 232) (1996) (ABA Standards are instructive in determining the appropriate level of discipline). Those standards require consideration of (1) the duty

15

violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See ABA Standard 3.0. The Special Master concluded that "David-Vega violated a duty to her client, the legal system, and her profession"; that she "acted knowingly"; and that "the injury to the client was significant." The Special Master also concluded that nine out of the eleven aggravating factors set forth in ABA Standard 9.22 applied: dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceedings; submission of false evidence during the disciplinary process; refusal to acknowledge the wrongful nature of conduct; vulnerability of the victim; substantial experience in the practice of law; and the indifference to making restitution.[13] See ABA Standard 9.22 (b), (c), (d), (e), (f), (g), (h), (i), and (j). Additionally, the Special Master concluded that out of the thirteen mitigating factors set forth in ABA Standard 9.32, "only a few [we]re in her favor," as she had no

---

[13] The Special Master found that the only two aggravating factors that did not apply were prior disciplinary offenses and illegal conduct. See ABA Standard 9.22 (a) & (k).

16

prior disciplinary history and recently expressed remorse for her actions. See ABA Standard 9.32 (a) & (l). The Special Master also noted in mitigation that she was suffering from personal and emotional problems and that, apart from the disciplinary matter at issue, she had a reputation as a "stellar" and "professional" lawyer among the judges whom she had appeared before. See ABA Standard 9.32 (g) & (i).[14]

Based on the lack of prior disciplinary history and the character and reputation evidence, the Special Master recommended a suspension of at least two years. The Special Master further noted that the violations admitted by David-Vega, particularly her fabrication of evidence, were among the most serious violations under the rules and that the Court may decide that disbarment is the appropriate sanction. See *In the Matter of Dorer*, 304 Ga. 442, 445 (2018) (rejecting petition for voluntary discipline seeking reprimand for admitted violation of Rule 8.4 (a) (4), noting that this "violation is among the most serious

---

[14] Although, when discussing factors in mitigation, the Special Master stated that David-Vega's "core argument . . . w[as] that she was suffering from personal and emotional problems," it is unclear whether he found that she had a "mental disability" as provided in ABA Standard 9.32 (i).

charges that can be leveled against an attorney—it is a violation that commonly warrants disbarment").

We appreciate the Special Master's careful analysis in this matter. We agree with the Special Master's determination that nine out of the eleven aggravating factors set forth in ABA Standard 9.22 are applicable to this matter, while only a few of the mitigating factors set forth in ABA Standard 9.32 are applicable. We also agree with the Special Master that David-Vega's false statements as to when she was terminated by Milan and her fabrication of evidence during the underlying disciplinary proceeding and in the malpractice case against her implicate some of the most serious violations under the Rules, and that severe discipline is warranted. After consideration of the record in this matter, we conclude that disbarment is the appropriate sanction for David-Vega's violations of the GRPC. We conclude that this sanction is consistent with prior disciplinary matters in which we have disbarred attorneys who have made false statements to a tribunal and in connection with disciplinary proceedings and have fabricated evidence. See, e.g., *In the Matter of Eddings*, 314 Ga. 409, 417-418 (877 SE2d 248) (2022) (disbarring attorney in part because he had made

18

false statements to a tribunal and in connection with the disciplinary proceeding); *In the Matter of Jefferson*, 307 Ga. 50, 55-56 (834 SE2d 73) (2019) (same); *Nicholson*, 299 at 741 (disbarring attorney who submitted a false affidavit to the court); *In the Matter of Koehler*, 297 Ga. 794, 795-796 (778 SE2d 218) (2015) (disbarring attorney, in part because he made materially deceitful and misleading statements in federal civil action); *In the Matter of Minsk*, 296 Ga. 152, 153 (765 SE2d 361) (2014) (disbarring attorney for making knowingly false and misleading statements to his client, to the court, and to third parties in connection with a bankruptcy case); *In the Matter of Jones-Lewis*, 295 Ga. 861, 862 (764 SE2d 549) (2014) (disbarring attorney, in part because she made false statements to the juvenile court); *In the Matter of Mann*, 293 Ga. 664, 665 (748 SE2d 914) (2013) (disbarring attorney, in part because he made a false statement to the court in a contempt hearing); *In the Matter of Manning-Wallace*, 291 Ga. 96, 97 (727 SE2d 502) (2012) (disbarring attorney who submitted false evidence to a tribunal, made materially false statements about the evidence to the tribunal, and failed to take any remedial action afterwards); *In the Matter of Shehane*, 276 Ga. 168, 168-169 (575 SE2d 503) (2003)

19

(disbarring attorney who fabricated evidence submitted to the investigative panel to make it appear as though he had handled his client's case).

Accordingly, it is hereby ordered that the name of Andrea Jo Anne David-Vega be removed from the rolls of persons authorized to practice law in the State of Georgia. David-Vega is reminded of her duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*