**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26Y0212

In the Matter of Hillman James Toombs

Decided: May 19, 2026

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Adam M. Hames at the request of Hillman James Toombs (State Bar No. 714655), pursuant to Bar Rules 4-214, 4-215, and 4-216. The Special Master concluded that Toombs, who has been a member of the Bar since 1988, violated Rules 1.4(a)(2), (a)(3), and (b); 8.1(a); and 8.4(a)(4) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102(d), for which the Special Master recommended disbarment. The maximum penalty for a violation of Rule 1.4 is public reprimand, while the maximum penalty for a violation of Rules 8.1(a) and 8.4(a)(4) is disbarment. The Review Board adopted the Special Master's findings of fact and conclusions of law but recommended that Toombs receive a two-year suspension. The State Bar and Toombs have both filed exceptions to the Review Board's report. After our careful review of the record, we agree with the Review Board and conclude that a two-year suspension is appropriate, as more fully discussed below.

1. *Procedural History*

In December 2023, the State Bar filed a formal complaint

against Toombs, alleging violations of multiple Bar Rules. A Special Master was then appointed and after acknowledging service, Toombs filed his answer. Following an evidentiary hearing, the State Bar and Toombs filed post-hearing briefs, and the Special Master then issued his report and recommendation.

## 2. *Special Master's Report and Recommendation*

### (a) *Factual Findings*

Based on the State Bar's formal complaint, Toombs's answer, the evidentiary hearing, and the post-hearing briefs, the Special Master recounted the following. In December 2021, Toombs agreed to represent a client in a divorce case, taking over the matter for another attorney, and the client paid a fee of $6,500 in installments for the representation. As for scope of work, the agreement provided that the legal work included "all necessary court appearances, research, investigation, correspondence, preparation and drafting of pleadings and other legal documents, trial preparation and related work to properly represent [the client]." The client met with Toombs twice before trial, and Toombs told the client that the judge likely would have each party pay their own attorney fees. The client wanted the divorce to go to trial, and Toombs was able to accomplish that goal. Following trial in February 2022, the client was happy with the outcome of the final judgment and decree of divorce, as he was primarily concerned with obtaining custody of his daughter, which he received.

The final judgment entered in March 2022 also provided that the parties could submit a request for attorney fees. The deadline for submission was March 15, 2022, but Toombs believed that the deadline for submitting this request was March 16, 2022. When the client inquired about the letter brief requesting the attorney fees, Toombs told him that he still had time, and the client

2

testified that Toombs did not tell him he filed the letter brief a day late. Toombs's paralegal attempted to email the letter brief to opposing counsel and the court. Toombs believed that the letter brief was properly submitted to the trial court (as opposing counsel had responded to the email containing his letter brief). But Toombs's paralegal included the wrong email address for a court staff member, although she did not realize it at the time because she did not get a bounce-back notification. It was not until the paralegal saw an order awarding attorney fees to the client's ex-wife that she realized that the letter brief was never sent to the court, and Toombs purportedly did not understand this until he was deposed in this disciplinary matter years later. However, Toombs acknowledged that he was ultimately responsible for where his paralegal sent the letter brief.

The order for attorney fees issued on June 29, 2022, stating that only the client's ex-wife submitted a letter brief requesting fees. The June 29 order awarded opposing counsel $14,900 to be paid by Toombs's client within 60 days of the date of the order. The order also required the parties to split the cost of the guardian ad litem's bill for an additional $1,045.

When the client received a copy of the order, he texted Toombs, who told him that he would look at the order when he got back from vacation. Toombs later texted the client: "I am back; will call you before the weekend." However, Toombs did not call him before the weekend or otherwise return his calls. The client went to Toombs's office, and Toombs avoided speaking with him. During the next 30 days, Toombs did not do anything about the award of attorney fees. At the hearing in this matter, Toombs explained that he interpreted the order awarding attorney fees to be based upon the conduct of the client's previous attorneys in

this case, as Toombs himself had represented the client in his divorce proceeding for only three months.

Nevertheless, at some point the client and Toombs discussed a motion for reconsideration ("MFR"), which was prepared by Toombs and verified by the client on August 19, 2022. Toombs's paralegal claimed that she attempted to e-file the MFR but then discovered later by inquiry that it was not filed. It was not until June 2023 — almost a year later — that Toombs and his paralegal attempted to re-file the MFR and received notice that because it had been more than 30 days after the order awarding attorney fees had issued, a new action would have to be filed. Toombs filed the MFR as a new civil action in June 2023, but he failed to file a complaint and never served the defendant (the client's former wife) because he did not have a current address for her, so the action was dismissed for want of prosecution. The MFR was eventually filed in the original case in December 2023 — over a year after the client filed his grievance in this matter and after Toombs believed he had been fired.

Toombs claimed that he submitted the December 2023 MFR to protect the client's interests. Toombs's paralegal stated that it took so long to file it because the practice was having computer issues that obscured the fact that the MFR was not properly e-filed in August 2022. The Special Master concluded the paralegal's testimony was "unlikely and implausible." The Special Master found that if there was any question of whether the MFR was filed or not, a simple check of the docket would have confirmed this.

The client testified that the award of attorney fees was difficult for him financially. At the evidentiary hearing, Toombs took responsibility for the trial court having awarded attorney fees without the trial court first hearing from the client. The Special

4

Master also found that the client was a combat veteran, disabled, and suffering from post-traumatic stress disorder ("PTSD"), anxiety, and panic attacks, and Toombs was aware that the client was on a fixed income for disability. Toombs testified that although he was aware that the client was on a fixed income for disability, he was uncertain about the nature of the client's disability, which the Special Master found "not believable."

In his December 2022 response to the initial disciplinary investigation, Toombs responded that he had filed an MFR and enclosed a copy of the MFR dated August 19, 2022, the (never-filed) letter brief, and the March 2022 final decree, but the final decree was missing the page that stated letter briefs had to be filed by March 15, 2022. Toombs also did not mention the court's order that found that Toombs had not filed a letter brief. In a second response, Toombs claimed that he completed the "job" when the final decree was entered, and he only submitted the letter brief and the subsequent MFR as a courtesy to the client.

A number of character witnesses testified at the hearing in this matter that Toombs was a founding member of a mentoring organization, had impeccable character, and was honest, trustworthy, hardworking, and always responsive. The Special Master further noted that Toombs himself is a decorated combat veteran.

(b) *Rule Violations*

The Special Master concluded that the State Bar met its burden by clear and convincing evidence that Toombs violated Rule 1.4(a)(2) (lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished), by failing to consult with the client about the client's other available options for addressing the attorney fees award, such as filing a motion for new trial or an appeal; and Rule

1.4(a)(3) (lawyer shall keep the client reasonably informed about the status of the matter), by being dismissive of the client's inquiries about attorney fees before the letter brief was due. The Special Master further concluded that Toombs violated Rule 1.4(b) (lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

Next, the Special Master concluded that Toombs had violated Rule 8.1(a) (lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), in that he mispresented to the Bar in December 2022 that he had filed an MFR on the attorney fees issue, when in fact he had not done so. It was not until June 2023, after he believed his representation of the client had ended, that Toombs could demonstrate an actual documented attempt to file the MFR, which the Special Master characterized as an attempt "to cover [Toombs's] proverbial backside."[1] Finally, the Special Master concluded that the Bar had shown by clear and convincing evidence that Toombs violated Rule 8.4(a)(4) (it is a violation for a lawyer to engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation), by lying to his client and the State Bar that he had filed an MFR on the attorney fees issue in August 2022.

(c) *ABA Standards*

Next, the Special Master considered the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") in determining the appropriate level of discipline in this case. See *In the Matter of Morse*, 266 Ga. 652, 653 (1996). The Special Master found that Toombs had violated his duty to his

---

[1] According to the Special Master, Toombs believed that his representation ended when the client filed a grievance against him in November 2022.

6

client and to the legal system and that he acted knowingly and intentionally in his violations. See ABA Standard 3.0 (stating that "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors"). Moreover, the Special Master noted that although it was not clear if the award of attorney fees would have changed significantly had Toombs timely filed a letter brief or MFR, it was clear that the trial court awarded a significant amount of attorney fees against the client without his position being presented and that the award injured him financially.

In considering the aggravating factors, the Special Master concluded that most of them applied to Toombs, including ABA Standard 9.22(a) based on an investigative panel reprimand that Toombs received in 2002 and a review panel reprimand he received in 2004. The Special Master further noted that under Bar Rule 4-103, a third disciplinary infraction constitutes a discretionary ground for suspension or disbarment and that there is no time limitation in this Rule. In addition, the Special Master noted Toombs's dishonesty, see ABA Standard 9.22(b), and stated that although every lawyer has made a mistake such as filing something a day late or using the wrong email address, Toombs made a bad situation worse by lying and failing to communicate with the client, instead of simply trying to remedy his mistakes. The Special Master concluded that Toombs engaged in a pattern of misconduct and committed multiple offenses, see ABA Standards 9.22(c), (d), by lying to the client about the MFR being filed and then lying to the Bar about this twice; that he continued to maintain his position throughout the disciplinary process; and that numerous positions of Toombs were not supported and often contradicted by the evidence, including his claim that he was uncertain about the client's disability. Moreover, the Special Master found

7

that the client was a vulnerable victim, that Toombs made numerous false statements during the disciplinary process, that Toombs refused to acknowledge the wrongful nature of his conduct, and that he had substantial experience in the practice of law, having practiced for over 36 years, see ABA Standards 9.22(f), (g), (h), and (i).

As for mitigating factors, the Special Master noted that Toombs otherwise had a significantly good character and reputation, see ABA Standard 9.32(g), as evidenced by the number and "quality" of individuals from the community that came to testify on his behalf, including lawyers and law enforcement officers, and that his prior disciplinary offenses were remote. See ABA Standard 9.32(m).

(d) *Recommended Discipline*

The Special Master noted that this Court has repeatedly imposed a sanction on lawyers who make false statements, especially during a disciplinary investigation, and that this Court has held that a false statement is "a very serious matter which typically results in, at least, a significant suspension from the practice of law." *In the Matter of Iwu*, 303 Ga. 539, 540–41 (2018) (quotation marks omitted) ("[T]hrough Iwu's choice to lie to the Bar during the disciplinary proceedings in an effort to avoid taking responsibility for his actions, he only exacerbated his own problems by subjecting himself to more serious sanctions."); *In the Matter of Nicholson*, 299 Ga. 737, 741 (2016) (holding that the Court has "little tolerance for a lawyer who lies during disciplinary proceedings or engages in conduct involving dishonesty, fraud, deceit, or misrepresentation" (quotation marks omitted)). Accordingly, based upon the entire record and the number of aggravating factors, the Special Master recommended that Toombs be disbarred.

8

See *In the Matter of Stephens*, 318 Ga. 375, 388–89 (2024) (agreeing with Special Master and disbarring lawyer who repeatedly lied to court over the course of several years and initially made misrepresentations to the Bar when it began investigating); *In the Matter of Eddings*, 314 Ga. 409, 409–10 (2022) (agreeing with Special Master and Review Board and disbarring attorney who made multiple false statements in connection with representation of a client and in disciplinary proceedings); *In the Matter of Minsk*, 296 Ga. 152, 153 (2014) (on notice of discipline, disbarring attorney who was in default on allegations that he engaged in a pattern of making knowingly false statements to his clients, to the court, and to third parties in connection with a bankruptcy case).

### 3. *Toombs's Exceptions to the Special Master's Report*

Toombs requested review by the Review Board and raised a number of exceptions to the Special Master's report related to the Special Master's factual findings regarding the client's disabilities, the Special Master's credibility determinations, and the Special Master's finding that he was being dishonest or knowingly made a false statement of material fact in his response to the grievance — specifically by failing to include the trial court order awarding attorney fees and including a copy of the final decree that had a page missing. He contended that it had not been proven by clear and convincing evidence that he violated any of the Bar Rules as found by the Special Master. He contended that there was no Rule 1.4 violation because both he and the client testified that there had been consistent communication throughout the representation, arguing that the client's testimony that communication stopped after the attorney fees award issued should be discredited "due to demonstrated memory issues." Next, he contended that there was no Rule 8.1(a) violation because he did not misrepresent to the Bar that he filed an MFR on

9

the attorney fees issue. He claimed that, at the time of his December 2022 response to the grievance, he truly believed the MFR had been filed in August 2022. He also contended that he did not violate Rule 8.4(a)(4) for the same reasons listed above.

Finally, Toombs contended that even if the Review Board believed he violated the Rules, it should find that the recommended punishment is excessive. Toombs contended that he did not abandon the client and he did not knowingly cause harm to him. He claimed that although he experienced problems with the submission of his letter brief and the filing of the August 2022 MFR, he was always acting in the interests of his client and kept him reasonably informed at all stages of the representation. Toombs contended that at most he acted negligently in this matter — the least culpable mental state. See *In the Matter of Breault*, 318 Ga. 127, 139 (2024).

### 4. *Review Board's Report and Recommendation*

The Review Board adopted the Special Master's findings as supported by the record and incorporated them by reference in the report. The Review Board also concluded that the Special Master's conclusions of law were correct and incorporated them by reference in the report. The Review Board agreed with the Special Master's analysis and adopted his findings regarding the duties violated, Toombs's mental state, the potential or actual injury caused, and the analysis of the aggravating and mitigating factors. However, the Review Board concluded that the recommendation of disbarment was excessive and that a reprimand was also not the appropriate discipline. Instead, it concluded that a two-year suspension was appropriate given this Court's recent opinion in *In the Matter of Hood*, 320 Ga. 440, 447 (2024) (accepting petition for voluntary discipline and imposing two-year suspension where attorney admitted to violating Rules 5.5(a), 8.1(a), and

10

8.4(a)(4); attorney admitted that he lied to disciplinary authorities in his initial responses to grievances). The Review Board concluded that Hood's conduct in two separate disciplinary matters and Toombs's conduct in this case were similar and that the aggravating and mitigating factors shared many similarities.

5. *The State Bar's Exceptions*

The State Bar has filed exceptions here to the Review Board's report and argues that the Special Master properly analyzed the recommended sanction based on the ABA Standards and case law. In addition, the Bar notes that pursuant to its rules, any finding of a disciplinary infraction in this matter shall be grounds for suspension or disbarment. See Bar Rule 4-103 ("A finding of a third or subsequent infraction under these Rules shall, in and of itself, constitute discretionary grounds for suspension or disbarment."); *In the Matter of Eddings*, 314 Ga. at 414 (noting that disbarment was appropriate, "particularly given application of Bar Rule 4-103"). In this case, the Bar notes that although Toombs's disciplinary history is somewhat remote in time, one of the prior sanctions was imposed on account of his dishonesty to a client — the same misconduct committed by Toombs in this case. See *In the Matter of Hemmann*, 304 Ga. 632, 635 (2018) (noting that "particularly if the prior misconduct was similar in nature, a higher level of discipline would be appropriate"). Moreover, the Bar argues that the Special Master correctly identified and cited several cases for the well-established principle that dishonesty to a client and dishonesty during the disciplinary process are serious offenses that warrant disbarment. The Bar argues that the Review Board's sole reliance on *Hood* to recommend a two-year suspension is misplaced because Hood filed a petition for voluntary discipline and admitted making false statements and

admitted rule violations. 320 Ga. at 441, 444. In addition, although Hood made misrepresentations regarding his conduct, here, the Bar contends that Toombs also engaged in a multi-part "cover up" including filing an MFR after he believed the representation had ended to protect not the client, but his *own* interests. Instead, the Bar contends, this case is more in line with *Stephens*, in which the respondent attorney was disbarred after she engaged in a deceptive cover-up that lasted several years and culminated in the respondent making false statements to the Bar in response to the grievance. 318 Ga. at 388. In sum, the Bar asks this Court to disbar Toombs.

6. *Toombs's Exceptions to the Review Panel's Report*

In his Exceptions to the Review Panel's Report, Toombs again argues that the Special Master's factual findings related to the client's PTSD, anxiety, and panic attacks should be stricken as clearly erroneous. Toombs also continues to argue that the Special Master's finding that he violated Rule 8.1(a) and 8.4(a)(4) by being dishonest or knowingly making false statements of material fact is clearly erroneous. Toombs notes that the client's grievance (dated November 2022) is premised in part on his contention that a letter brief had not been submitted by Toombs. He notes that when he initially submitted his response to the grievance in December 2022, it was his belief that the letter brief had been properly submitted via email and that the MFR had been properly submitted in August 2022. In addition, he states that by the time of his next communication with the State Bar, he realized that the August 2022 MFR had been rejected by the court, and so he told the Bar that, in order to rectify this, he "opened a new case for [the client] and filed an [MFR]." Toombs contends that he could not have violated Rule 8.1(a) or 8.4(a)(4) because he did not knowingly make a false statement of material fact to the State

12

Bar, nor act with the "implicit intent element" of Rule 8.4(a)(4). *In the Matter of West*, 301 Ga. 901, 904 (2017).

Toombs further argues that the Special Master clearly erred in determining that he violated Rule 1.4 by failing to consult with the client. The client's uncontradicted testimony was that his first two divorce attorneys failed to follow his direction or communicate with him in a reasonable fashion, but the same was not true for Toombs, who communicated consistently with the client during the representation, Toombs insists. Finally, he contends that the disciplinary recommendations of the Special Master and the Review Board are both excessive. He notes that this Court has "recognize[d] that an attorney's refusal to acknowledge the wrongful nature of his or her behavior should not automatically be considered a factor in aggravation of punishment, particularly in the face of an honest and objectively reasonable belief in one's own innocence." *In the Matter of Suttle*, 288 Ga. 14, 16 (2010).

Toombs contends that the Special Master should have recognized additional mitigating factors, including the absence of a dishonest or selfish motive in trying to assist the client at no additional cost, timely good faith efforts to rectify the consequences of the misdirected letter brief, and full and free disclosure to the Bar and Review Board. He claims that in addition to *Hood* there are several other cases that support the conclusion that the levels of discipline recommended here are too harsh. See, e.g., *In the Matter of Henry*, 318 Ga. 272 (2024) (accepting petition for voluntary discipline and imposing a public reprimand for attorney who violated Rule 8.4(a)(4) by lying to his client; attorney was experiencing significant personal problems at the time); *In the Matter of Brantley*, 299 Ga. 732 (2016) (accepting Special Master's report and recommendation and imposing a 180-day suspension where

13

lawyer with prior disciplinary history admitted various rule violations primarily involving client communication issues during a time of great personal stress and/or physical impairment and failed to respond accurately to the State Bar about the status of one of her underlying cases). In conclusion, Toombs states that although he recognizes this Court's repeated pronouncement that making false statements to a court or the State Bar during the disciplinary process is a very serious matter, he vigorously disputes any contention that he intended to deceive the client, the Court, or the Bar, and claims that to the extent he made any misstatements, he was merely negligent. He argues that if discipline is to be imposed, it should not adversely impact his "ability to practice law and conclude his lengthy legal career with dignity."

7. *The State Bar's Response to Toombs's Exceptions*

The State Bar responds that the Special Master's credibility determinations were sound and supported by the record. See *Eddings*, 314 Ga. at 416 (this Court will not second guess a special master's credibility determinations if they are supported by the record). In addition, the Bar claims that the Special Master's factual finding that Toombs lied and in doing so violated Rules 8.1(a) and 8.4(a)(4) is supported by the record. Specifically, the Bar claims that in his December 2022 response to the State Bar, Toombs submitted a letter unequivocally claiming that he had filed the enclosed MFR; however, he then admitted at the evidentiary hearing that the MFR was not actually filed until December 2023 — a year later. Although Toombs asserts in his exceptions that he believed that the MFR was filed in August 2022, the Bar claims he provides no record cites to support this assertion. Moreover, the State Bar contends that the Special Master found that although Toombs testified that he brought the award of attorney fees to the client's attention shortly after the order was issued,

this testimony was not credible given that the record shows that the *client* was the one who notified Toombs of the attorney fees award.

Next, the State Bar argues that the Special Master also correctly found that Toombs violated Rule 1.4(a)(2), (a)(3), and (b), as the record shows that he failed to inform the client of the adverse attorney fees award; that he conceded that he failed to discuss all of the client's options for dealing with the adverse attorney fees ruling; and that long after the representation ended, Toombs filed a new lawsuit on behalf of the client without discussing it with him. Moreover, there was ample testimony from the client that he had difficulty reaching Toombs.

Finally, the State Bar again claims that the appropriate sanction for Toombs's misconduct is disbarment because the record establishes without a doubt that he was deceitful. Further, a violation of Rule 8.4(a)(4) does not require a showing of subjective intent. See *In the Matter of Davis*, 303 Ga. 564, 565 (2018) ("to the extent that Rule 8.4(a)(4) contains an implicit intent element, that element is not focused on whether the attorney intended to violate the Rule"). The Bar claims that Toombs created his own predicament by failing his client in multiple ways and then lying about it, and the Special Master's recommendation of disbarment is appropriate, supported by the decisions of this Court, and should be affirmed.

8. *Analysis and Conclusion*

This Court generally recognizes that a special master is in "the best position to determine the witnesses' credibility" and "generally defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Tuggle*, 317

15

Ga. 255, 258 (2023) (quotation marks and emphasis omitted). See also *In the Matter of Braziel*, 306 Ga. 385, 387 (2019) (this Court does not second-guess a special master's credibility determinations if they are supported by the record). However, the Court affords no deference to the conclusions of law made by a special master or the Review Board, instead reviewing de novo what rules were violated and what level of discipline is appropriate. *Tuggle*, 317 Ga. at 258.

Here, the Special Master's factual findings and credibility determinations generally are supported by the record. Toombs argues that the Special Master's findings regarding the client's PTSD and related conditions should be stricken as clearly erroneous. But regardless of whether the record supports the Special Master's finding that the client suffered from PTSD specifically, the Special Master did not clearly err in finding that the client was a vulnerable victim by virtue of some disability. The record shows that the client testified at the evidentiary hearing that he was disabled as a result of his military service and had "major depression[,] … chronic low back pain, anxiety, panic attacks, migraine headaches … [and] suicidal ideation." In addition, Toombs acknowledged at the hearing in this matter that he knew the client was on a "fixed income" and that the client "may have mentioned" that he had a disability, and the record contains a text message from the client to Toombs indicating that the client was taking medicine for anxiety and depression. Moreover, we do not second-guess the Special Master's decision to credit the client's testimony over Toombs's testimony evincing some uncertainty about the nature of the client's disability.

As to the Rules violations, the Special Master did not err in finding that Toombs violated Rule 1.4, given his failure to communicate with the client regarding the award of attorney fees and

possible means to accomplish the goal of reversing the attorney fees award. And although it appears that Toombs did provide consistent communication throughout the representation in the divorce proceedings before the attorney fees issues, the Special Master's determination that Toombs failed to adequately communicate with the client after the attorney fees award was issued is supported by the record, given text message evidence showing that the client inquired with Toombs about the attorney fees award and the client's testimony that Toombs did not call upon returning from vacation as promised and failed to return "every voicemail" and "every message" he left with Toombs's secretary.

Toombs's arguments that the Special Master erred in finding that he violated Rules 8.1 and 8.4(a)(4) also lack merit. Rule 8.1(a) provides that it is a violation of the Rules for a lawyer to "knowingly make a false statement of material fact" in connection with a disciplinary matter, and Rule 8.4(a)(4) provides that it is a violation of the Rules for a lawyer to engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation. The ABA Standards define "[k]nowledge" as being when a lawyer acts with "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at III (Definitions). The Special Master found that Toombs told the State Bar in December 2022 that he filed an MFR regarding the court's order requiring the client to pay attorney fees, attaching a copy that was dated August 2022. However, as the Special Master concluded, there was no documentary evidence that there was any attempt to file the motion in August 2022. Although Toombs's paralegal claimed they had computer problems that obscured the fact that the motion was not e-filed in August 2022, the Special Master's finding that this explanation was unlikely and implausible is not clearly erroneous, nor is the finding that a check of the

17

docket would have confirmed that the MFR was not in fact filed in August 2022. All of this supports the Special Master's findings that Toombs lied to the Bar about the MFR being filed, acting knowingly and intentionally. Additionally, the Special Master found that Toombs had the client verify a draft of the MFR in August 2022 but did not successfully file the MFR until the following year. This supports the Special Master's finding that Toombs lied to the client by informing him that he had filed the MFR and was dishonest and deceitful with the client regarding the attorney fees issue. And together these findings support the Special Master's conclusions that Toombs violated Rule 8.1(a) by knowingly making a false statement of material fact in connection with a disciplinary matter and violated Rule 8.4(a)(4) by engaging in professional conduct involving dishonesty, fraud, deceit, or misrepresentation.

Moreover, there is no clear error in the Special Master's determination in aggravation that Toombs acted with a dishonest or selfish motive given that instead of simply trying to remedy his mistakes, he made a bad situation worse by failing to communicate openly and honestly with the client and the State Bar. And his claim that this Court should consider in mitigation that he made timely good faith efforts to rectify the consequences of his misdirected letter brief and full and free disclosure in the disciplinary proceedings is unpersuasive, as it took him over a year to file an MFR in the original case, and he did so only after the grievance in this matter was filed.

However, as for the level of discipline, we agree with the Review Board that disbarment based on the circumstances of this case is excessive. Toombs did offer significant evidence of good character, and his two prior offenses are remote in time. Moreover, Toombs's decision to refuse to concede all inferences that

18

might be drawn against him based on the record does not warrant a harsher discipline. See generally *In the Matter of Meyers*, 302 Ga. 742, 745 (2017) (agreeing with Review Panel's "implicit conclusion that a lawyer's decision to put up a defense in a disciplinary proceeding — whether by disputing evidence against him or refusing to concede whatever inferences the State Bar argues may be drawn therefrom — is not always an aggravating factor that counsels imposition of harsher discipline" and imposing two-year suspension for attorney's conduct in submitting altered bills to corporate client, where he refused to admit any wrongdoing and steadfastly denied any knowing participation in scheme to defraud the client). And although we agree with the State Bar that *Hood* is distinguishable given that in that case the attorney eventually admitted his wrongdoing, including admitting that he initially lied in his response to the grievance, see *Hood*, 320 Ga. at 442–43, additional case law supports a suspension as opposed to disbarment based on the unique circumstances of this case and the particular misconduct at issue. See *In the Matter of Moore*, 300 Ga. 407 (2016) (one-year suspension with conditions for violations of Rules 3.3, 4.1, and 8.4(a)(4) where attorney failed to serve opposing party with pleadings, falsely stated in certificates of service that he had done so, misrepresented communications with the opposing party, denied wrongdoing in the disciplinary proceedings, and expressed neither remorse nor acceptance of responsibility); *In the Matter of Reddick-Hood*, 296 Ga. 95 (2014) (three-year suspension with conditions for violations of various Rules including 1.4, 8.1, and 8.4(a)(4), despite prior disciplinary history, where attorney provided restitution and expressed remorse and other mitigating factors were present). Compare *In the Matter of David-Vega*, 318 Ga. 600 (2024) (on Special Master's recommendation of a suspension of at least two years, disbarring attorney who violated multiple rules, including 1.4, 8.1(a), and

19

8.4(a), where she fabricated evidence during underlying disciplinary proceedings to make it appear as though client had terminated her representation prior to statute of limitation expiring on client's personal injury claim). Accordingly, it is hereby ordered that Hillman James Toombs is suspended from the practice of law in this State for a period of two years from the date of this opinion. Toombs is reminded of his duties under Bar Rule 4-219(b).

*Two-year suspension. All the Justices concur.*